UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES P. WOOD,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : CASE NO. 3:14-cv-1467 (VLB) |
| | : |
| CAPTAIN COLON, et al.,<br>　　Defendants. | : May 18, 2016<br>: |

**MEMORANDUM OF DECISION GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Plaintiff, James P. Wood, currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed this action *pro se* against defendants Captain Colon, Officer S. Ocasio, Social Worker Erica Richardson and Warden Edward Maldonado.[1] The remaining claims include use of excessive force, use of threats, deliberate indifference to safety by knowingly disseminating false information regarding gang affiliation, retaliation, conspiracy, and failure to discipline staff. The defendants have filed a motion to dismiss all remaining claims. For the reasons that follow, the defendants' motion is granted and denied in part.

I.   **Standard of Review**

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts as true all factual allegations in the complaint and

---

[1] All claims against defendant Town of Somers were dismissed in the Initial Review Order filed on October 6, 2015. *See* [Dkt. #14]. In addition, the Court dismissed all claims for violation of the Health Insurance Portability and Accountability Act, deprivation of property and denial of equal protection of the laws. [*Id.*].

draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The Court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

In reviewing the complaint in response to a motion to dismiss, the Court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the Court accept the allegations in the complaint as true "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Even under this standard, however, the Court liberally construes a *pro se* complaint. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

II.     **Allegations**[2]

The incidents underlying the complaint occurred at Osborn Correctional Institution.  On March 15, 2014, defendant Colon told the plaintiff that he had entered into the Department of Correction main computer a statement that the plaintiff was the "head/leader of the Pecker Wood A/B" gang.  [Am. Compl., Dkt. #10-1 at 1].  Defendant Colon stated that this information would prevent the plaintiff from being granted parole.  [*Id.*]

On March 21, 2014, defendants Colon and Ocasio searched the plaintiff's cell.  [Compl., Dkt. #1 at 6].  During the search, they broke the plaintiff's headphone and destroyed family photos.  [*Id.*]  When the plaintiff complained that they had damaged his personal property, defendant Colon verbally assaulted the plaintiff.  [*Id.*]

On March 31, 2014, the plaintiff spoke with defendant Richardson in the mental health unit.  When he complained about the cell search, she told him that he could not complain about correctional staff and asked him to leave the mental health unit.  [*Id.*]  That evening, the plaintiff was called to defendant Colon's office.  Defendant Richardson and several unidentified officers were present.  Defendant Colon called the plaintiff a "cry baby and grown up bitch."  [*Id.*]  The

---

[2] In evaluating the allegations offered by the *pro se* plaintiff, the Court considers the facts from the original complaint (Dkt. #1), that have not been repeated in the amended complaint.  *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ. 5322 (KPF), 2015 WL 408941, at *1, n. 1 (S.D.N.Y. Jan. 30, 2015) (citations and quotations omitted).

3

verbal harassment continued over the next few weeks. [*Id.*]

On May 22, 2014, the plaintiff wrote a letter to defendant Warden Maldonado complaining about defendant Colon's behavior. [*Id.* at 9]. When defendants Colon and Ocasio learned about the letter, they pushed the plaintiff in the hallway and threatened harm to him and his family if he continued writing to the warden. [*Id.* at 8]. Specifically, the plaintiff contends that one of the two officers told him that if he kept "writing the warden [defendant] Colon will have [the plaintiff] and [his] family taken care of[]." [*Id.*].

On June 13, 2014, defendant Ocasio searched the plaintiff's cell and issued him a disciplinary report for possession of sexually explicit materials and nuisance contraband. [*Id.*] Upon receiving the disciplinary report, the plaintiff was taken to the restrictive housing unit. During transport, defendant Ocasio pushed and verbally assaulted the plaintiff. [*Id.*].

The following day, June 14, 2014, the plaintiff wrote a letter to Sandy Wood. [*Id.*] Defendant Ocasio opened and read the letter. [*Id.*] Defendant Ocasio claimed the letter contained specific threats against defendant Colon and issued the plaintiff a second disciplinary report. [*Id.*]. The plaintiff pled guilty to both charges. [*Id.* at 9].

On June 24, 2014, the plaintiff learned that he had been denied parole because of the statement defendant Colon had entered into the Department of Correction computer regarding gang affiliation. [Dkt. #10, Am. Compl. at 1].

4

### III. Analysis

The defendants move to dismiss all remaining claims. First, they argue that the Eleventh Amendment bars all claims for damages against them in their official capacities. Second, they contend that the plaintiff's allegations are insufficient to support a claim for conspiracy. Third, the defendants argue that the allegations of verbal harassment, sexual harassment and use of excessive force do not rise to the level of constitutional violations. Fourth, they note that the plaintiff fails to demonstrate personal involvement of defendant Warden Maldonado in his claim for improper supervision of subordinates. Finally, the defendants contend that any retaliation claims are conclusory.

### A. Eleventh Amendment Immunity, Injunctive Relief and Declaratory Relief

The plaintiff names each of the defendants in his or her individual and official capacities. In his prayer for relief, he seeks $250,000.00 in compensatory damages and unspecified punitive damages. The plaintiff also seeks unspecified declaratory and injunctive relief.

The Eleventh Amendment divests the district court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 341-45 (1979). Nor has the plaintiff alleged any facts suggesting that Connecticut has waived this immunity. Accordingly, any claims for monetary damages

5

against the defendants in their official capacities are barred by the Eleventh Amendment. The defendants' motion to dismiss is granted as to these claims.

The incidents underlying the complaint occurred at Osborn Correctional Institution and all defendants are located there. The plaintiff now is confined at MacDougall-Walker Correctional Institution. His transfer renders moot any claims for injunctive relief against correctional staff at Osborn Correctional Institution. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (requests for injunctive relief against officials at a particular correctional facility become moot when inmate is transferred to a different facility). Any requests for injunctive relief are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff also seeks unspecified declaratory relief. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. Am. Inst. of Certified Public Accountants*, No. 10-cv-2291(KAM/ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustible Equip. Assoc.*, 838 F.2d 3, 37 (2d Cir. 1988). The incidents underlying this action have already occurred. The plaintiff has not identified any legal relationships or issues that require resolution via declaratory relief. Accordingly, the request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). *See Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006)

(concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

B. <u>Verbal Harassment and Use of Excessive Force</u>

The defendants next argue that the plaintiff's allegations of verbal sexual harassment and use of excessive force do not rise to the level of constitutional violations.

Verbal threats and harassment have been held not to state a cognizable claim under section 1983.  See *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (name-calling without appreciable injury not constitutional injury); *Murray v. Pataki*, No. 03-CV-1263 (LEK/RFT), 2007 WL 956941, at *8 (N.D.N.Y. Mar. 29, 2007) ("Plaintiff's claim for verbal harassment in the form of racial statements and threats is not actionable under 42 U.S.C. § 1983."); *Jean-Laurant v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("[V]erbal intimidation does not rise to the level of a constitutional violation . . . ."); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (verbal harassment or profanity alone, regardless of how inappropriate or unprofessional, is not actionable under section 1983).

The plaintiff alleges only that defendants Colon and Ocasio made threats and sexual statements.  He does not allege that he suffered any actionable injury as a result of the verbal harassment.  Thus, the statements do not rise to the level of a constitutional violation.  The defendants' motion to dismiss is granted as to the claims for verbal and sexual harassment.

The plaintiff also includes claims for excessive use of force based on his

allegations that defendant Ocasio pushed him while he was being escorted to restrictive housing and that defendants Colon and Ocasio pushed and pulled him in the hallway.  The Second Circuit considers brief confrontations between inmates and prison guards that cause *de minimis* injuries insignificant for Eighth Amendment purposes.  *See Perry v. Stephens*, 659 F. Supp. 2d 577, 582-83 (S.D.N.Y. 2009) (citing cases).   The plaintiff alleges only two brief encounters with no physical injuries.  Thus, he fails to state a plausible claim, and the defendants' motion to dismiss is granted as to the excessive force claim.

C.      <u>Conspiracy</u>

In his third claim, the plaintiff alleges that defendant Richardson conspired with the other defendants to deprive him of his Eighth and Fourteenth Amendment rights.  The plaintiff cites 42 U.S.C. § 1985(c) in the jurisdiction section of his complaint.  There is no such section. The Court assumes that the plaintiff is referencing section 1985(3), and that he brings his conspiracy claim pursuant to that section.

Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus.  *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 62 (2009).  Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or any other constitutional right.  *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).  As

the plaintiff makes no reference to racial or class-based discrimination, his section 1985(3) claim fails.

Even if the plaintiff is asserting his conspiracy claim under section 1983, it should be dismissed.  To state a section 1983 claim for conspiracy, the plaintiff must allege facts demonstrating an agreement between two or more state actors, or between a state actor and a private party, to act in concert to inflict an unconstitutional injury and an overt act done in furtherance of the agreement that causes damages.  *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Since the conspiracy plaintiff alleges concerns the cell searches, verbal, and physical harassment which the Court has already found to be insufficient to establish a constitutional violation, his conspiracy claim must also fail.  The defendants' motion to dismiss is granted as to the conspiracy claim.

D.   Supervisory Liability

The plaintiff asserts a claim for supervisory liability against defendant Maldonado for failing to properly supervise the other defendants.

The Second Circuit has historically recognized five ways in which a supervisory official may be held liable for a civil rights violation.  To state a claim for supervisory liability, the plaintiff must allege that the defendant either: (1) actually and directly participated in the constitutional violation; (2) failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) created a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowed such a policy or custom to continue; (4) was grossly

negligent of subordinates who committed a violation; or (5) failed to act on information indicating that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). The plaintiff also must demonstrate a causal link between the supervisor's inaction and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In 2009, the Supreme Court addressed this issue and indicated that the term "supervisory liability" is a misnomer; a government official, regardless of his position, is accountable only for his own conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Second Circuit has not addressed the viability of all of the categories of supervisory liability following *Iqbal*. Some district courts have concluded that only the first and third categories remain. *See, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801(SAS), 2009 WL 1835939 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010). Others continue to consider the particular violations alleged and the role of the supervisory official in deciding whether any of the five categories apply. *See, e.g., D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010).

The defendants rely on the Second Circuit's affirmance in *Bellamy* to argue that this Court should consider only the first and third categories of supervisory liability claims. However, the Second Circuit has more recently declined to address the impact of *Iqbal* on the five categories of supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the

Supreme Court's decision in *Ashcroft v. Iqbal* … may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case…."); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n. 3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations").  Until the Second Circuit specifically addresses the impact of *Iqbal*, this Court will continue to consider all categories of supervisory liability claims.

Here, the plaintiff alleges that he wrote to defendant Maldonado on May 22, 2014, complaining about the actions taken by defendant Colon.  Although merely writing to defendant Maldonado may not be sufficient for the plaintiff to prevail on his claim, it is sufficient to survive a motion to dismiss.  *See Grullon*, 720 F.3d at 141 (holding that although insufficient at trial or on summary judgment, allegations that prisoner informed supervisory officials of his claim are sufficient to state a claim for supervisory liability).

However, none of the actions discussed in the letter, namely, verbal harassment, destruction of property, and the entry of false information into Department of Correction records for the purpose of denying plaintiff parole rise to the level of constitutional violations.  As for the latter, a prisoner "has no constitutionally or federally protected right to parole." *Hicks v. Lantz*, No. 3:08-cv-1012 (MRK), 2009 WL 2869753, at **3-4 (D. Conn. Sept. 1, 2009).  Thus,

plaintiff's claim falls outside the scope of the Fourteenth and Eighth Amendments. *See Colon v. Furiani*, No. 07-cv-6022L, 2008 WL 5000521, at **4-5 (W.D.N.Y. Nov. 19, 2008) (granting summary judgment to defendants on § 1983 claim where plaintiff contended that a defendant "wrongfully denied plaintiff the opportunity to complete [a] class, which jeopardized plaintiff's chances for parole" because the claim was "purely speculative and does not demonstrate a violation of any constitutional right") (quoting *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ("There is no 'constitutional or inherent right' to parole")).

E. <u>Retaliation</u>

Finally, the Court determined that the plaintiff alleged facts supporting a claim of retaliation against defendants Ocasio and Colon. An inmate asserting a First Amendment retaliation claim must demonstrate that his speech or conduct was protected, the defendants took adverse action against him, and there was a causal connection between the adverse action and the protected speech or conduct. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014).

The plaintiff alleges that he wrote a letter of complaint to the warden. This arguably is protected conduct. *See King v. McIntyre*, No. 9:11-CV-1457, 2015 WL 1781256, at *13 (N.D.N.Y. Apr. 8, 2015) ("[W]riting a letter of complaint to a superior officer is at least arguably protected conduct"). The plaintiff alleges that, once defendants Colon and Ocasio learned of the letter, they threatened the plaintiff and his family and used excessive force against him. The two

disciplinary reports also were issued soon after defendants Colon and Ocasio learned of the letter. These allegations are sufficient to demonstrate the defendants' awareness of the protected conduct and a causal connection between the protected activity and the allegedly retaliatory conduct. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that the protected activity was close in time to the adverse action").

The adverse action by the defendants must "deter a similarly situated inmate of ordinary firmness from exercising his or her constitutional rights…." *Id.* at 128 n. 7 (2d Cir. 2009). It need not necessarily deter the plaintiff. General comments and verbal abuse are insufficient to constitute adverse action. *See, e.g., King*, 2015 WL 1781256, at **20-21 (statement that plaintiff would "have a hard time here" if he continued to write complaints considered too vague to constitute adverse action); *Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"). Depending on context, more specific threats may constitute adverse action. *See King,* 2015 WL 1781256, at *21; *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (verbal threats can constitute adverse action even if they do not rise to level of Eighth Amendment violations if sufficiently direct and specific).

The plaintiff alleges that defendants Colon and Ocasio threatened to harm both the plaintiff and his family if he continued to write letters to the warden. He

also identifies use of force and issuance of disciplinary reports as the retaliatory conduct.  Because the plaintiff identifies more than verbal threats, the Court considers the allegations sufficient to state a claim for retaliation.  The defendants' motion to dismiss is denied as to the retaliation claim.

IV.     Conclusion

The defendants' motion to dismiss [Dkt. #28] is GRANTED as to the claims for verbal sexual harassment, use of excessive force, conspiracy, and as against the defendants in their official capacities.  The motion is DENIED as to the claims for retaliation against defendants Colon and Ocasio.  In addition, the requests for injunctive and declaratory relief are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).  Accordingly, the remaining claims in this case are First Amendment retaliation claims against defendants Colon and Ocasio.

As all claims against defendants Richardson and Maldonado have been dismissed, the Clerk is directed to terminate them as defendants in this case.

SO ORDERED this 19th day of May 2016, at Hartford, Connecticut.

                                    /s/
                            Vanessa L. Bryant
                            United States District Judge